IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

Janet Guzman, Christen Harper, Claudia Sampedro, Jessica Killings *a/k/a Charm*, Jessica Hinton *a/k/a Jessa*, Paola Canas, Sandra Valencia, Tiffany Gray *a/k/a Tiffany Toth*, Gallienne Nabila,

Plaintiffs,

v.

Acuarius Night Club, LLC *d/b/a* Acuarius Night Club,

Defendant.

Case No. 6:24-cv-00330-JDA

**OPINION AND ORDER**

This matter is before the Court on Defendant's motion to dismiss. [Doc. 48.] The motion has been fully briefed [Docs. 49; 50] and is ripe for review.

**BACKGROUND**[1]

Plaintiffs Janet Guzman, Christen Harper, Claudia Sampedro, Jessica Killings, Jessica Hinton, Paola Canas, Sandra Valencia, Tiffany Gray, and Gallienne Nabila (collectively, "Plaintiffs") are professional models who reside throughout the United States. [Doc. 1 ¶ 6.] At all times relevant to this action, Defendant Acuarius Night Club LLC operated Acuarius Night Club in Greenville, South Carolina, where it was engaged in the business of selling alcohol and food in a sexually charged atmosphere. [*Id.* ¶¶ 7, 18, 54.]

[1] The facts included in this Background section are taken directly from the Complaint. [Doc. 1.]

Plaintiffs bring this action related to Defendant's alleged misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom is a well known professional model, to promote Defendant's night club. [*Id.* ¶ 1.] Plaintiffs allege that their images, photos, and likenesses (collectively, "Images") were "misappropriated, and intentionally altered, by Defendant to make it appear that [Plaintiffs] worked at, endorsed, or were otherwise associated or affiliated with Defendant," and that "[i]n the case of each Plaintiff, this apparent claim was false." [*Id.* ¶¶ 2, 22–23.] Plaintiffs further allege that this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization, and that no Plaintiff has ever received any remuneration for Defendant's use of her Images. [*Id.* ¶¶ 24–25.] Plaintiffs allege that, in certain cases, Defendant misappropriated Plaintiffs' advertising ideas because the Images came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow her fan base, and build and maintain her brand. [*Id.* ¶ 26.] Plaintiffs attached exhibits to the Complaint, which they allege depict them and were used to promote Acuarius on its Facebook and Instagram pages and were altered to make it appear that Plaintiffs were either employees working at Acuarius, endorsed Acuarius, or otherwise associated or affiliated with Acuarius even though no Plaintiff has any connection to Acuarius. [*Id.* ¶¶ 28; 31; 34; 37; 40; 43; 46; 49; 52; Docs. 6-1–6-9.]

Plaintiffs allege that Defendant owns, operates, and controls Acuarius's social media accounts, including its Facebook, Twitter, and Instagram accounts, and used those accounts to promote Acuarius and to attract patrons for Defendant's own commercial and financial benefit. [*Id.* ¶¶ 55–57.] Defendant purportedly used, advertised, created, printed, and distributed Plaintiffs' Images to create the false impression with potential

clientele that each Plaintiff either worked at, endorsed, or was otherwise associated or affiliated with Acuarius, and did so to receive benefits from that false impression, including monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income. [*Id.* ¶¶ 58–59.] Plaintiffs allege that Defendant knew that no Plaintiff has ever been affiliated with or employed by Acuarius, that all of Defendant's activities were done without the knowledge or consent of Plaintiffs, and that Defendant has never compensated Plaintiffs for the unauthorized use of the Images. [*Id.* ¶¶ 60–62.]

Plaintiffs also allege facts concerning standard business practices in the modeling industry, including that the fee a professional model receives is negotiated by her agency based on factors such as the model's reputation, earning capacity, experience, and demand; where and how long the photo shoot takes place; where and how the images will be used; and the length of time the rights to use the photos will be assigned, known in the industry as the "term." [*Id.* ¶¶ 64–65.] Most licenses to use a model's image are for one-, two-, or three-year terms, and almost never is there a "lifetime" term. [*Id.* ¶ 66.] Plaintiffs allege Defendant knew that, by using the Images, it was violating Plaintiffs' rights to privacy and rights of publicity and creating a false impression to potential customers that Plaintiffs worked at or endorsed Acuarius, and that at no point was any Plaintiff ever contacted by Defendant, or any representative of Defendant, to request permission to use any of the Images. [*Id.* ¶¶ 67, 70–73.] Plaintiffs allege that the unauthorized use of the Images deprives Plaintiffs of income they are owed relating to the commercialization of the Images and has substantially injured their respective careers and reputations because

of the negative connotations of the false impression of association with Acuarius. [*Id.* ¶¶ 68–69.]

Based on these and additional allegations, Plaintiffs filed this action asserting the following causes of action: violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), for false advertising and false association; misappropriation of Plaintiffs' likenesses; violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq.; defamation; negligence and respondeat superior; conversion;[2] unjust enrichment; and quantum meruit. [*Id.* ¶¶ 74–143.] Plaintiffs seek actual, punitive, and treble damages; a permanent injunction; and attorneys' fees and costs. [*Id.* at 23.]

## APPLICABLE LAW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Even so, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*,

[2] In their response in opposition to Defendant's motion to dismiss, Plaintiffs withdrew their conversion claim. [Doc. 49 at 14 & n.6.] Accordingly, Defendant's motion to dismiss is granted as to the conversion claim.

762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal* Practice, *and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold

requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## DISCUSSION

In its motion to dismiss, Defendant first argues that Plaintiffs' claims are barred by the applicable statutes of limitations and laches. [Doc. 48 at 6–9.] Defendant also argues that Plaintiffs fail to allege they own the photographs at issue; that the Complaint fails to state a claim for relief regarding Plaintiffs' claims for violations of the Lanham Act and the SCUTPA and for defamation, negligence, conversion, unjust enrichment, and quantum meruit; and that, if the misappropriation of identity or likeness claim is not dismissed as time barred, it should be dismissed for lack of subject matter jurisdiction. [*Id.* at 10–26.] The Court addresses Defendant's arguments seriatim.[3]

### Statute of Limitations and Laches

[3] The Court cites to South Carolina law when discussing principles of state law because federal courts, when exercising supplemental jurisdiction over state law claims, apply the forum state's choice-of-law rules. *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983). The parties appear to agree that South Carolina law applies. [*See generally* Docs. 19; 20; 21 (all citing South Carolina law).]

Section 43(a) of the Lanham Act does not contain a statute of limitations period, and courts consider laches as the appropriate timeliness defense to § 43(a) claims. *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 293 (4th Cir. 2021). Although laches is an "equitable defense that is distinct from the statute of limitations," a court may determine that the most analogous state law statute of limitations creates a presumption of laches for claims filed outside the analogous limitations period.[4] *Id.* at 294 (internal quotation marks omitted). Even where the presumptive limitations period would bar a plaintiff's claim, a court must still consider whether the plaintiff can overcome the presumption by considering whether the plaintiff knew of the defendant's adverse use of the mark, whether the plaintiff's delay in challenging the use was unreasonable or inexcusable, and whether the plaintiff's delay unduly prejudiced the defendant. *Id.* at 295.

"State law claims pursued in federal court are subject both to the state's relevant statute of limitations and to the state's corresponding rules regarding commencement of an action." *Wider v. Isuzu, Inc.,* No. 3:06-1103-CMC, 2006 WL 1488836, at *1 (D.S.C. May 24, 2006). With respect to the state law claims Plaintiffs assert in this case, the statutes of limitations are two years for a defamation claim, S.C. Code Ann. § 15-3-550, and three years for a SCUTPA claim, S.C. Code § 39-5-150, negligence claim, S.C. Code Ann. § 15-3-530(5), misappropriation of likeness claim, S.C. Code Ann. § 15-3-530(5), and conversion claim, S.C. Code Ann. § 15-3-530(4).[5] For some claims under South

[4] The Fourth Circuit Court of Appeals has applied South Carolina's three-year statute of limitations for fraud and unfair trade practices as the most analogous state law statute of limitations when addressing a laches defense to a Lanham Act claim. *Design Gaps, Inc. v. Distinctive Design & Constr. LLC*, 162 F.4th 452, 483 (4th Cir. 2025) (citing S.C. Code Ann. §§ 15-3-530(7), 39-5-150).

[5] As to Plaintiffs' claims for unjust enrichment and quantum meruit, the doctrine of laches applies rather than a statute of limitations. *See Thomerson v. DeVito*, 844 S.E.2d 378,

Carolina law, the limitations period is governed by the discovery rule and "begins to run when a person *could or should have known*, through the exercise of reasonable diligence, that a cause of action might exist." *Burgess v. Am. Cancer Soc'y, S.C. Div., Inc.*, 386 S.E.2d 798, 799–800 (S.C. Ct. App. 1989).

A plaintiff's failure to comply with the applicable statute of limitations is an affirmative defense. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("Ordinarily, a defense based on the statute of limitations must be raised by the defendant through an affirmative defense, and the burden of establishing the affirmative defense rests on the defendant." (citation omitted)). Accordingly, a court should not address a defendant's statute-of-limitations defense at the motion-to-dismiss stage unless "facts sufficient to rule on [the defense] are alleged in the complaint." *See id.*; *see also Gidron v. United States*, 9:20-cv-3539-MBS, 2021 WL 3711099, at *2 (D.S.C. Aug. 10, 2021) ("A statute of limitations defense is rarely appropriately raised on a Rule 12(b)(6) motion . . . .").

Here, the Court concludes that facts sufficient to rule on Defendant's statute of limitations and laches defenses are not alleged in the Complaint. Indeed, the Complaint itself does not include any allegations regarding the timing of the alleged use and distribution of the Images. [*See generally* Doc. 1.] The exhibits to the Complaint show

---

380–81 (S.C. 2020) ("This Court has long recognized that the statute of limitations now codified in section 15-3-530 applies to actions at law, while the doctrine of laches applies to suits in equity." (footnote omitted)); *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009) (noting that "[u]njust enrichment is an equitable doctrine"); *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 532 S.E.2d 868, 872 (S.C. 2000) (noting that "*quantum meruit*, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy"). The statute of limitations may be applied by analogy to an equitable claim, but a court has the authority to extend the period if it believes it is warranted under the circumstances. *Thomerson*, 844 S.E.2d at 381.

Instagram postings dated June 2017, March 2019, June 2019, July 2019, November 2020, December 2020. [Docs. 6-3–6-7.] However, nothing in the Complaint or the exhibits provides a date when Plaintiffs could have or should have discovered that Defendant was using the Images. [*See generally* Docs. 1; 6-3–6-9.] Moreover, the Complaint alleges that the postings were undiscoverable because they were published on social media threads and that Defendant republicized the Images after the initial posting dates. [*Id.* ¶¶ 91–92.] Based on these factual allegations, the Court concludes that it may not rule on Defendant's statute of limitations and laches defenses with respect to most of Plaintiffs' claims on a Rule 12(b)(6) motion.[6] However, as argued by Defendant, because "'South Carolina has not adopted the discovery rule in libel and slander cases'" [Doc. 48 at 9 (quoting *Jones v. City of Folly Beach*, 483 S.E.2d 770, 775 (S.C. Ct. App. 1997))], Plaintiffs' defamation claim is time barred because the postings at issue were published in 2016, 2017, and 2019, well over two years before this action was filed in 2024, *see Jones*, 483 S.E.2d at 774 (stating that, for a defamation claim, the "cause of action accrues at the moment when the plaintiff has a legal right to sue on it" and not when the plaintiff knew or should have known of the alleged wrongful acts).[7] Accordingly, Defendant's motion to dismiss is granted as to Plaintiffs' defamation claim.

---

[6] This ruling does not definitively resolve the statute of limitations and laches issues. *See Goodman*, 494 F.3d at 466 n.2 ("We resolve the limitations issue only as a pleading matter, holding that a Rule 12(b)(6) motion to dismiss cannot in this case dispose of the limitations issue. We do not dispose of the limitations question on the merits, as that requires further proceedings.").

[7] Defendant also argues that South Carolina courts would not apply the discovery rule to Plaintiffs' misappropriation of likeness claim. [Doc. 48 at 8–9 (contending that, although no reported South Carolina cases address whether the discovery rule applies to a misappropriation of likeness claim, South Carolina courts would follow other states and reject application of the discovery rule where the misappropriation is not concealed or used in a secretive manner, in part because it does not apply the discovery rule to

**Whether the Complaint Adequately States Claims for Relief**

Having determined that it may not rule on Defendant's statute of limitations and laches defenses with respect to most of Plaintiffs' claims, the Court now turns to Defendant's arguments that Plaintiffs have failed to state claims for relief.

***Lanham Act Claims***

Defendant argues that Plaintiffs have failed to state claims for violations of the Lanham Act's prohibition on false association, 15 U.S.C. § 1125(a)(1)(A), and false advertising, 15 U.S.C. § 1125(a)(1)(B). [Doc. 48 at 11–17.] The Court disagrees.

The Lanham Act provides that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her

---

defamation claims that share the concept of publication with misappropriation of likeness claims).] However, at this stage, the Court is not convinced that South Carolina would not apply the discovery rule to a misappropriation of likeness claim. *See Moriarty v. Garden Sanctuary Church of God*, 534 S.E.2d 672, 674–79 (S.C. 2000) (addressing the applicability of the discovery rule in a case that alleged an invasion of privacy claim along with other claims); *Shtukar v. Erie Ins. Grp.*, No. 2024-001311, 2026 WL 222255, at *3 n.5 (S.C. Ct. App. 2026) (noting that S.C. Code Ann. § 15-3-530(5) applies to a misappropriation of identity claim); *Ins. Prods. Mktg., Inc. v. Conseco Life Ins.*, No. 9:11-CV-01269-PMD, 2012 WL 3308368, at *9 (D.S.C. Aug. 13, 2012) (same); *Parkman v. Univ. of S.C.*, 44 F. App'x 606, 619 (4th Cir. 2002) (noting that the three-year statute of limitations in S.C. Code Ann. § 15-3-530 applies to an invasion of privacy claim in South Carolina); S.C. Code Ann. § 15-3-535 (codifying the discovery rule and stating that it applies to actions initiated under § 15-3-530(5)); *but see* S.C. Code § 15-3-550 (providing a two-year statute of limitations for defamation claims). Nevertheless, as stated, the Court's ruling today does not resolve the statute of limitations issue, and the parties may more fully brief this issue if the statute of limitations issue is raised later in the litigation.

> goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he is or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Subsection A of [§ 1125(a)(1)] covers 'false association,' and subsection B covers 'false advertising.'" *Amcol Sys., Inc. v. Lemberg L., LLC*, No. 3:15-3422-CMC, 2015 WL 8493955, at *4 (D.S.C. Dec. 10, 2015). The Court addresses Plaintiffs' false association and false advertising claims in turn.

False Association

To establish a false association claim, a plaintiff must prove:

> (1) the [d]efendants used his name or a word in interstate commerce in connection with goods and services; (2) the [d]efendants' use of his name or a word was likely to cause confusion, mistake or deception as to the association of the [d]efendant with the [p]laintiff, or the sponsorship, or approval of [d]efendant's goods or services; and (3) [p]laintiff is, or is likely to be, damaged by these acts.

*Geiger v. Abarca Fam. Inc.*, No. 3:21cv771, 2022 WL 4242838, at *10 (E.D. Va. July 29, 2022), *Report and Recommendation adopted by* 2022 WL 4241649 (E.D. Va. Sept. 14, 2022).

Defendant argues that Plaintiffs have failed to state a false association claim because the Complaint fails to allege facts sufficient to show a likelihood of consumer confusion. [Doc. 48 at 12–16.] However, the Court concludes that the Complaint alleges sufficient facts to survive a Rule 12(b)(6) motion as to the false association claim. Regarding Defendant's assertion that Plaintiffs have failed to allege they have the

strength of mark necessary for confusion to be likely, courts have held that recognizability of models may be considered in determining strength of mark. *See Souza v. Exotic Island Enters.*, 68 F.4th 99, 110–13 (2d Cir. 2023). Here, the Complaint alleges Plaintiffs are well-known models and further alleges specific details about their careers and public prominence. [Doc. 1 ¶¶ 1, 20, 27, 30, 33, 36, 39, 42, 45, 48, 51.] As to Defendant's argument that Plaintiffs have not alleged actual confusion in the marketplace, the Complaint alleges that Defendant distributed the Images "to create the false impression with potential clientele that each Plaintiff either worked at Acuarius, endorsed Acuarius, or was otherwise associated or affiliated with Acuarius" and to "cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Acuarius." [*Id.* ¶¶ 58, 85, 86; *see also id.* ¶¶ 67, 82, 94.] The Court concludes that, at this stage of the case, these allegations are sufficient to state a false association claim. *See Davalos v. GGC-Balt., LLC*, No. 1:24-CV-01733, 2025 WL 266673, at *1, 5 (D. Md. Jan. 22, 2025) (denying a motion to dismiss a false association claim on very similar allegations); *Campos v. Headlights, Inc.*, No. 2:22-CV-00017, 2023 WL 12239452, at *1, 4 (E.D.N.C. Aug. 29, 2023) (same); *Abarca Fam. Inc.*, 2022 WL 4242838, at *1–2, 10 (same); *see also Adventis, Inc. v. Consol. Prop. Holdings, Inc.*, 124 F. App'x 169, 173 (4th Cir. 2005) (noting that "the likelihood of confusion issue is an inherently factual issue that depends on the unique facts and circumstances of each case" (internal quotation marks omitted)).

<u>False Advertising</u>

To establish a false advertising claim, a plaintiff must show:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement

> about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (internal quotation marks omitted).

Defendant argues that the Images are not false or misleading and are not actually or likely deceptive because "no reasonable person would believe the [Images] of female models in the promotional posters exhibited with the [C]omplaint are 'employees working at Acuarius' or are persons 'associated with or affiliated with Acuarius,' rather than professional models having no idea Acuarius exists." [Doc. 48 at 17.] Defendant also contends that the Complaint does not adequately allege that any alleged misrepresentation is material because "Plaintiffs cannot . . . allege in good faith, without an 'information and belief' qualification, that any potential Acuarius patron seeing the posters responded any differently than he would have if he saw the poster for the same event depicting some other female model." [*Id.*] However, as noted, the Complaint alleges that Defendant used the Images in social media advertisements promoting Acuarius, despite knowing that Plaintiffs had no affiliation with the club. [Doc. 1 ¶¶ 1–2, 58–60, 74, 78–80.] These advertisements were misleading because they implied Plaintiffs had appeared at, endorsed, or supported Acuarius. [*Id.* ¶¶ 78–80.] And they had a material effect on consumers' purchasing decisions because Defendant used the Images to increase publicity and revenue. [*Id.* ¶¶ 59, 76.] The Court concludes that these

allegations are sufficient to state a false advertising claim at this stage. *See Campos*, 2023 WL 12239452, at *1, 4 (denying a motion to dismiss a false advertising claim on similar allegations); *Abarca Fam.*, 2022 WL 4242838, at *1–2, 9 (same). Accordingly, Defendant's motion to dismiss is denied with respect to Plaintiffs' Lanham Act claims.[8]

***SCUTPA Claim***

To plead a violation of the SCUTPA, a "plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected public interest; and (3) the plaintiff suffered monetary or property loss as a result of the defendant's unfair or deceptive act(s)." *Wright v. Craft*, 640 S.E.2d 486, 498 (S.C. Ct. App. 2006). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition." *Beaumont v. Walter Scotty Branch*, No. 2:23-cv-03546-DCN, 2023 WL 7075101, at *18 (D.S.C. Oct. 26, 2023).

Defendant argues that Plaintiffs' SCUTPA claim is repetitive of their Lanham Act claims and fails for the same reasons that the Lanham Act claims fail. [Doc. 48 at 17–18.] However, as discussed above, the Court concludes that the Complaint sufficiently pleads the Lanham Act claims and reaches the same conclusion regarding Plaintiffs' SCUTPA claim. Therefore, Defendant's motion to dismiss is denied as to Plaintiffs' SCUTPA claim.

---

[8] Defendant argues that, if Plaintiffs' misappropriation of likeness claim is not dismissed as time barred, which it is not, the Court should decline to exercise supplemental jurisdiction over that claim. [Doc. 48 at 25–26.] However, because the Court concludes that Plaintiffs have adequately pled their Lanham Act claims, the Court continues to have supplemental jurisdiction over the misappropriation of likeness claim.

***Negligence Claim***

To state a cause of action for negligence, a plaintiff must allege "the following four elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; and (4) damages proximately resulted from the breach of duty." *Thomasko v. Poole*, 561 S.E.2d 597, 599 (S.C. 2002).

Defendant argues Plaintiffs has failed to state a negligence claim because Defendant did not owe Plaintiffs a duty of care. [Doc. 48 at 21–23.] The Complaint alleges several duties that Defendant breached: (1) the duty to maintain policies governing the use of others' intellectual property, publicity rights, and/or images and likeness; (2) the duty to ensure that their advertising was not deceptive to consumers at large; and (3) the duty to hire, screen, retain, supervise, and/or train its employees and agents. [Doc. 1 ¶¶ 122–27; *see also* Doc. 49 at 13 (Plaintiffs' response in opposition to the motion to dismiss, arguing Defendant was negligent either by failing to maintain policies concerning the use of intellectual property or by not enforcing such policies).] Although Defendant argues that it owed no duty to Plaintiffs because it had no relationship with them, this argument is cursory, and Defendant cites minimal legal support, merely stating the elements of a negligence claim and that the existence of a duty is a question of law. [Doc. 48 at 22.] Accordingly, at this stage, where Defendant has not directed the Court to any case law suggesting that, as a matter of law, it did not owe Plaintiffs or

consumers at large a duty, the Court denies the motion to dismiss as to the negligence claim.[9]

***Quantum Meruit/Unjust Enrichment Claims***

"Unjust enrichment is an equitable doctrine which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff." *Dema v. Tenet Physician Servs.-Hilton Head, Inc.*, 678 S.E.2d 430, 434 (S.C. 2009). Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: "(1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by [the] defendant of the benefit under conditions that make it inequitable for him to retain it without paying its value." *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12, 15 (S.C. Ct. App. 1988).

Defendant argues Plaintiffs' quantum meruit and unjust enrichment claims should be dismissed because Plaintiffs have failed to plausibly allege they conferred a benefit on Defendant. [Doc. 48 at 24.] In their Complaint, Plaintiffs allege that Defendant benefitted

[9] Defendant also argues that Plaintiffs' remedy is an intentional tort claim—misappropriation of likeness or identity—and not a negligence claim. [Doc. 48 at 22–23.] However, the case Defendant cites for the proposition that the same wrongful act cannot be both intentional and negligent also recognizes that "South Carolina allows alternative pleading." *State Farm Fire & Cas. Co. v. Barrett*, 530 S.E.2d 132, 137 (S.C. Ct. App. 2000) (concluding that "a party may not invoke *[insurance] coverage* by couching intentional acts in negligence terms" (emphasis added)). That case does not stand for the proposition that a plaintiff may not assert alternative claims for intentional torts and negligence in the same complaint. To be clear, the Court is not concluding that Plaintiffs will succeed on their negligence claim, and some uncertainty remains as to the exact duty that Defendant purportedly owed Plaintiffs. However, Plaintiffs' factual allegations satisfy the pleading standard, and Defendant's conclusory arguments provide the Court with no persuasive basis for dismissing the claim at this stage. *See Clayton v. Nationwide Mut. Ins.*, 260 F. Supp. 3d 514, 521 (D.S.C. 2017) ("As a general rule, parties may not outsource their legal research to the court or otherwise foist upon it the necessary legwork to flesh out a legal claim or defense . . . .").

from using the Images by attracting clientele to Acuarius without compensating Plaintiffs for using the Images. [Doc. 1 ¶¶ 133–43.] The Court concludes that these allegations are sufficient to state a claim for unjust enrichment and quantum meruit at this stage. *See Geiger v. United Wholesale Food*, No. 8:25-cv-0443, 2026 WL 2469530, at *1, 8 (D. Md. Aug. 24, 2026) (concluding that similar allegations sufficiently state a claim for unjust enrichment); *Geiger v. Racing Stables*, No. 4:21-cv-3523-JD, 2025 WL 1951879, at *1, 6 (D.S.C. July 16, 2025) (same); *Davalos*, 2025 WL 266673, at *1, 7 (same). Accordingly, Defendant's motion to dismiss is denied as to Plaintiffs' quantum meruit and unjust enrichment claims.[10]

## **CONCLUSION**

For these reasons, Defendant's motion to dismiss [Doc. 48] is GRANTED IN PART and DENIED IN PART. The motion is granted as to Plaintiffs' claims for conversion and defamation but otherwise denied.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

November 6, 2026
Greenville, South Carolina

[10] Because the Court has addressed each of Plaintiffs' claims individually, including the elements necessary to adequately plead each claim, the Court declines to address Defendant's argument that Plaintiffs have not alleged they own the Images other than noting that Defendant has failed to develop this argument or explain how ownership of the Images is relevant to any claim. [Doc. 48 at 10.]